IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DEMARCUS WILLIAMSON,<br><br>Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | 4:22-cv-00253-SHL-HCA<br><br><br>**ORDER GRANTING<br>MOTION TO DISMISS** |

## I.   INTRODUCTION

Plaintiff DeMarcus Williamson, proceeding pro se, brings a Fair Credit Reporting Act ("FCRA") claim against Defendant Experian Information Solutions, Inc. ("Experian") for allegedly including inaccurate information in his credit report and failing to correct the inaccuracy when he disputed it. (ECF 9.) Experian moves to dismiss, arguing, *inter alia*, Williamson's pleading fails to identify any inaccuracies, a threshold requirement for FCRA relief. (ECF 12-1.) The Court agrees and GRANTS Experian's Motion to Dismiss.

## II.   BACKGROUND

The Court construes the facts in the light most favorable to Williamson, the nonmoving party. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). On June 29, 2022,[1] Williamson used an online credit score service to obtain a copy of his credit report. (ECF 9, ¶ 6; ECF 2, p. 3.) The credit report compiled credit scores from three credit reporting agencies—TransUnion, Experian, and Equifax—each of which reflected Williamson having an open tradeline with Premier Credit Union. (ECF 2, p. 3.) Williamson printed the portion of the report showing each agencies' treatment of the Premier tradeline and wrote two comments in the margins. (Id.) The first comment, with an arrow pointing to the "Experian" column, states, "Please explain how and why this account is reporting so inaccurately if this information is coming from the same creditor?" (Id.) The second comment, with an arrow pointing to the "Payment Status" row, states, "This account is reporting as late as well and I never missed a payment." (Id.) Notwithstanding his

---

[1] Williamson's Amended Complaint states he obtained his credit report on June 29, 2022 (ECF 9, ¶ 6), but the credit report attached to his Complaint is date-stamped at 9:04 PM on May 18, 2022 (ECF 2, p. 3).

comment about the account "reporting as late," the Payment Status row of the report shows Experian and the other two credit reporting agencies reporting the tradeline as "Current." (Id.) Williamson also circled numerous pieces of information on the report, in each of the TransUnion, Experian, and Equifax columns, where modest differences existed in the reporting from each agency. (Id.) For example, in the Payment Frequency column, TransUnion reported the tradeline as "Monthly (every month)" while Experian and Equifax merely provide a dash and no substantive information. (Id.) Williamson circled all three entries.

Williamson mailed the report, with his annotated notes, to Experian on June 29, 2022. (Id., pp. 2–4.) His letter said, "The information you report below is inaccurate and/or incomplete and I request that it be deleted: PREMIER CU 148611XXX." (Id., p. 2.) He asked that Experian "[m]ail [him] a copy of the complete consumer file that you have on me" and requested "a description of the procedure used to determine the accuracy or completeness." (Id.) In a separate e-mail enclosing the letter, he said, "I pulled my consumer reports in preparation to buy a house and noticed a host of accounts that are inaccurate, incomplete and that are just not in compliance with the FCRA." (Id., p. 4.) Williamson alleges Experian never responded to his requests and continued to report the "inaccurate" tradeline through at least November 18, 2022, when he filed his Amended Complaint. (ECF 9, ¶¶ 8–9.) During that time, he alleges he applied for a credit card with FNBO and was denied credit "based off information being reported by Experian." (Id., ¶ 6.)

Williamson filed his Complaint against Experian on August 5, 2022 (ECF 1), which, as later amended, asserts seven violations of the FCRA (ECF 9). Categorically, he makes three claims: (1) Experian failed to follow reasonable procedures to assure the "maximum possible accuracy" of the Premier tradeline when originally preparing his report, in violation of 15 U.S.C. § 1681e; (2) Experian failed to conduct a reasonable reinvestigation of the Premier tradeline and follow all statutory notice and information requirements following receipt of his dispute letter, in violation of 15 U.S.C. § 1681i; (3) and Experian failed to delete the Premier tradeline from his credit report despite it being inaccurate, in violation of 15 U.S.C. § 1681i. (ECF 9.)

Experian moves to dismiss Williamson's Amended Complaint under Fed. R. Civ. P. 12(b)(6) and 12(b)(5), arguing his claim fails on the merits and, alternatively, due to lack of service. (ECF 12.) Experian argues that neither Williamson's pleading nor his correspondence specifies how its reporting of the Premier tradeline is inaccurate, a prerequisite to FCRA relief. (ECF 12-1, pp. 5–7.) Even if it were inaccurate, Experian asserts the FCRA is not a strict liability statute, and

the Amended Complaint fails to allege Experian employed unreasonable procedures or conducted an unreasonable investigation in response to Williamson's dispute letter. (Id., pp. 7–9.) Williamson did not respond to Experian's motion.

On January 27, 2023, the Court issued an Order clarifying that any lack of service in this case was the fault of the Court's, since it authorized Williamson to proceed in forma pauperis on September 27, 2022. (ECF 13.) As a result, the Court denied Experian's Fed. R. Civ. P. 12(b)(5) motion and directed Experian to either waive service or indicate it would require service by the United States Marshals Service. (Id.) Experian waived service and consented to the Court's exercise of personal jurisdiction over it on February 2, 2023. (ECF 14.) The only remaining issue is Experian's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## III.  LEGAL ANALYSIS

### A.    Legal Standards and Background.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). In determining plausibility, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012) (per curiam). The Court is not obligated to accept legal conclusions, however, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 955 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

A pro se complaint "must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Rinehart v. Weitzell*, 964 F.3d 684, 687 (8th Cir. 2020) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)). The Court will afford Williamson the benefit of less stringent review, although he has substantial experience in federal litigation. Since December 2021, he has filed four Fair Debt Collection Act ("FDCA") cases and eight FCRA cases in this

Court, with varying degrees of success.[2] He also appears to have a connection with Chantierra Moore, who was a co-plaintiff in two[3] of Williamson's FDCA cases and brought four[4] suits of her own. There is a high degree of similarity in Williamson's and Moore's pleadings and, as demonstrated by the Court's Order dismissing Moore's FCRA case against Experian today,[5] their complaints are sometimes identical in important respects. Regardless, the "liberal construction" the Court employs for Williamson's pro se complaint means that "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

Williamson's claims all sound in the FCRA. The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Congress enacted the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, (2007). It generally requires credit reporting agencies like Experian to "follow

---

[2] *See Moore v. H&R Accts., Inc*., 4:21-cv-00408-SMR-SHL (S.D. Iowa Dec. 30, 2021) (FDCA case closed on June 24, 2022, following stipulated dismissal with prejudice); *Moore v. LVNV Funding, LLC*, 4:22-cv-00006-SHL-HCA (S.D. Iowa Jan. 6, 2022) (FDCA case closed on August 22, 2022, after the Court granted defendant's motion to dismiss); *Speller v. Portfolio Recovery Assocs., LLC*, 4:22-cv-00007-SHL-HCA (S.D. Iowa Jan. 6, 2022) (FDCA case closed on August 22, 2022, after the Court granted defendants' motion to dismiss); *Mosley v. Automated Accts. Mgmt. Servs., LLC*, 4:22-cv-00012-SMR-HCA (S.D. Iowa Jan. 18, 2022) (FDCA case closed on August 12, 2022, following settlement); *Williamson v. Equifax Info. Servs., LLC*, 4:22-cv-00254-SHL-HCA (S.D. Iowa Aug. 5, 2022) (FCRA case closed on October 5, 2022, following voluntary dismissal with prejudice); *Williamson v. Trans Union LLC*, 4:22-cv-00255-SHL-HCA (S.D. Iowa Aug. 5, 2022) (FCRA case closed Jan. 13, 2023, following settlement); *Williamson v. The Receivable Mgmt. Servs. LLC*, 4:22-cv-00304-SHL-HCA (S.D. Iowa Sept. 13, 2022) (FCRA case closed December 5, 2022, following dismissal with prejudice); *Williamson v. Equifax Info. Servs., LLC*, 4:22-cv-00340-SHL-HCA (S.D. Iowa Oct. 6, 2022) (FCRA case closed October 21, 2022, following dismissal with prejudice); *Williamson v. Equifax Info. Servs., LLC*, 4:22-cv-00378-SHL-HCA (S.D. Iowa Nov. 7, 2022) (FCRA case closed on January 26, 2023, following voluntary dismissal with prejudice); *Williamson v. Maximus Educ., LLC*, 4:23-cv-00032-SHL-HCA (S.D. Iowa Jan. 25, 2023) (ongoing FCRA case); *Williamson v. Premier Credit Union*, 4:23-cv-00039-SHL-HCA (S.D. Iowa Jan. 30, 2023) (ongoing FCRA case).
[3] *See Moore v. H&R Accts., Inc*., 4:21-cv-00408-SMR-SHL (S.D. Iowa Dec. 30, 2021) (FDCA case closed on June 24, 2022, following stipulated dismissal with prejudice); *Moore v. LVNV Funding, LLC*, 4:22-cv-00006-SHL-HCA (S.D. Iowa Jan. 6, 2022) (FDCA case closed on August 22, 2022, after Court granted defendant's motion to dismiss).
[4] *See Moore v. Automated Accts. Mgmt. Servs., LLC*, 4:21-cv-00379-SMR-SBJ (S.D. Iowa Dec. 6, 2021) (FDCA case closed January 3, 2022, following settlement); *Moore v. Equifax Info. Servs., LLC*, 4:22-cv-00262-SHL-HCA (S.D. Iowa Aug. 15, 2022) (FCRA case closed December 7, 2022, following settlement); *Moore v. Trans Union LLC*, 4:22-cv-00355-SHL-HCA (S.D. Iowa Oct. 18, 2022) (FCRA case closed December 5, 2022, following voluntary dismissal with prejudice); *Moore v. Experian Info. Sols., Inc*., 4:22-cv-00354-SHL-HCA (S.D. Iowa Oct. 18, 2022) (ongoing FCRA case).
[5] *See Moore v. Experian Info. Sols., Inc*., 4:22-cv-00354-SHL-HCA (S.D. Iowa Oct. 18, 2022) (ECF 13).

reasonable procedures to assure maximum possible accuracy" of information on a consumer's credit report, 15 U.S.C. § 1681e(b), and conduct a "reinvestigation" of such information if a consumer disputes the accuracy of any reported item, *id*., § 1681i(a)(1).

Paramount to a consumer's entitlement to relief against a consumer reporting agency for FCRA violations is the presence of inaccurate information on a report. *See Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000) (gathering cases holding that the inaccuracy of the report is an essential element of an FCRA claim); *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1102 (D. Minn. 2011) (rejecting plaintiff's argument that the "technical accuracy of the information" on the report is "not critical" to his claim where courts consistently require a showing of inaccuracy before letting a § 1681i claim proceed); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) ("At the very least, it is difficult to see how a plaintiff could prevail on a claim for damages under § 1681i without a showing that the disputed information disclosed by the credit agency was, in fact, inaccurate."). The consumer also must establish the unreasonableness of the consumer reporting agency's conduct in publishing the information; however, this only becomes relevant if the inaccuracy is first proven. If the threshold showing of inaccuracy is made, the consumer must show the agency acted unreasonably either upfront through a systemic procedural failure or after the dispute arose by failing to conduct a proper reinvestigation. *See, e.g.*, *Rydholm*, 44 F.4th at 1108 (The FCRA "does not hold a [consumer reporting agency] responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures.") (quoting *Sarver v. Experian Info. Sols*., 390 F.3d 969, 972 (7th Cir. 2004)); *Henson v. CSC Credit Servs*., 29 F.3d 280, 286–87 (7th Cir. 1994) (discussing contours of reinvestigation requirement, the adequacy of which is ultimately a question of fact).

The consumer bears the burden of establishing inaccurate information. *See Cahlin v. Gen. Motors Acceptance Corp*., 936 F.2d 1151, 1156 n.9 (11th Cir. 1991) ("[T]he burden of proving that a particular report is inaccurate is part of the plaintiff's case and not an affirmative defense for a defendant credit reporting agency.") "A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc*., 158 F.3d 890, 895 (5th Cir. 1998); *accord Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

B.      *Williamson Has Not Stated a Plausible Claim for Relief.*

Williamson's Amended Complaint generically alleges that his credit report contained "incomplete, inaccurate, false information" relating to the Premier tradeline without providing any detail on what, specifically, was incomplete, inaccurate, or false. (ECF 9, ¶ 6.) The closest thing he offers to a specific allegation is in his communication with Experian attached to the prior version of his pleading. (ECF 2, pp. 2– 3.) The communication includes a one-page printout of his credit report with three columns of information from the three credit reporting agencies (often called a "tri-merge report"). Williamson made handwritten annotations and notes on the tri-merge report that, under the liberal standard applicable to pro se pleadings, the Court will attempt to decipher.

One of Williamson's handwritten notes states: "This account is reporting as late as well and I never missed a payment," with a handwritten arrow pointing to the Payment Status row. (Id., p. 3.) However, according to the report, each of the three credit reporting agencies shows Williamson's payment status as "Current" for the Premier tradeline. (Id.) None of Williamson's filings allege the existence of—much less attach—any credit report identifying his Premier tradeline as being in late payment status.

His other handwritten note on the tri-merge report asks for an explanation from Experian as to "why [the Premier] account is reporting so inaccurately if this information is coming from the same creditor?" (Id.) Williamson appears to be taking issue with modest differences between the three credit reporting agencies in the reported status of his Premier tradeline; for example, one shows the balance owed as $13,524 while the other two show it as $13,395. (Id.) There are also small differences as to the "Date of Last Activity" (with two agencies reporting April 1, 2022, and the third reporting March 24, 2022), the "Date Opened" (either July 1, 2020, or July 18, 2020), and other categories of information. (Id.) Williamson circled entries in each row of the report where the information from the three agencies does not perfectly match. (Id.) In context, his theory appears to be that discrepancies in the information reported by the three credit reporting agencies, no matter how tiny, automatically give rise to FCRA liability for at least one of them.

In the circumstances presented here, Williamson's theory fails for at least three reasons. First, as noted above, he never identifies which information in his report he actually believes is false, inaccurate, or misleading. The Court therefore cannot tell whether the discrepancies in the tri-merge report mean an agency actually got something wrong, or if those discrepancies instead can be reconciled. For example, the two agencies that show a reported account balance of $13,395

also have a "Date Reported" of April 1, 2022 or later, while the agency showing the higher reported balance of $13,524 shows a "Date Reported" of March 24, 2022. This suggests Premier received and/or credited a payment on Williamson's account after March 24, 2022. If so, the report is accurate and any discrepancies in account balance are simply the result of timing. Williamson's failure to allege otherwise means he has not satisfied Fed. R. Civ. P. 12(b)(6). *See Rodriguez v. Trans Union LLC*, No. 1:19-CV-379-LY, 2019 WL 5565956, at *3 (W.D. Tex. Oct. 28, 2019) (dismissing FCRA claim for failure to state a claim where credit report, viewed as a whole, was not inaccurate or misleading); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Second, even assuming that at least one piece of information in the tri-merge report is truly false, inaccurate, or misleading, Williamson has not alleged that this information is found in Experian's column as opposed to the columns from the other two credit reporting agencies. In other words, he has not sufficiently alleged that it was Experian, and not one of the other agencies, that provided the false, inaccurate, or misleading information. This, again, means his pleading does not satisfy Fed. R. Civ. P. 12(b)(6). *See Frey v. City of Herculaneum*, 44 F.3d 667, 672 (8th Cir. 1995) (dismissing complaint against multiple defendants that gave "no indication of what their involvement might be"); *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012) (complaints that "lump[] all defendants together" and do not allege "who did what to whom" fail to state a claim for relief).

Third, Williamson also has failed to plausibly allege the materiality of the unspecified false, inaccurate, or misleading information in his credit report. *See Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 568 (5th Cir. 2020) ("A credit report does not become inaccurate whenever there is an omission, but only when an omission renders the report misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.") (internal quotation marks and citation omitted). He asserts FNBO denied him credit "based off the information being reported by Experian" and then generically asserts that Experian's conduct "severely damaged" his personal and credit reputation and caused "his FICO scores to be lowered resulting in him being denied credit or being granted credit with a much higher interest rate." (ECF 9, ¶¶ 6, 10.) He does not, however, clarify what information FNBO relied upon in allegedly denying him credit, identify any specific lender who granted him credit at a "much higher interest rate," or explain how he knows his FICO score changed as a result of Experian's alleged errors. These omissions

are glaring given the ticky-tack nature of the discrepancies in the tri-merge report upon which his claim is based. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) ("[N]ot all inaccuracies cause harm or present any material risk of harm.").

Take, for example, the discrepancy in the "Date Opened" row of Williamson's credit report as to the Premier tradeline. The TransUnion column reports a "Date Opened" of July 18, 2020, but the Equifax and Experian columns report a "Date Opened" of July 1, 2020. (ECF 2, p. 2.) Assuming this is one of the items of information in the credit report that is allegedly false, misleading, or inaccurate (which, to be clear, the Amended Complaint never actually says), and assuming Experian and Equifax are the ones who got it wrong, as opposed to TransUnion (which, again, Williamson never alleges), the Court cannot imagine why this tiny error would have affected Williamson's FICO score or changed his creditworthiness in the eyes of a lender. *See Meeks v. Equifax Info. Servs., LLC*, No. 1:18-CV-03666-TWT-WEJ, 2019 WL 1856411, at *7 (N.D. Ga. Mar. 4, 2019) (dismissing for failure to state a claim where allegedly misleading statement could not have materially misled a prospective lender). In the words of a judge in the District of Minnesota, Williamson "alleges no facts that might plausibly explain how or why a potential lender reasonably reached some adverse conclusion regarding [his] credit history or creditworthiness based on these elements." *Santos v. Experian Info. Sols., Inc.*, No. 21-CV-117 (ECT/ECW), 2021 WL 4034801, at *4 (D. Minn. Sept. 3, 2021).

The same is true for the other alleged discrepancies in Williamson's credit report. He does not plausibly allege, for example, why a lender would treat him adversely simply because one credit reporting agency stated an outstanding balance on the Premier tradeline of $13,524 as of March 24, 2022, while two others show it as $13,395 as of April 1, 2022. (ECF 2, p. 3.) It seems highly likely in context that a payment was credited to the account during the intervening period. Indeed, this is all but confirmed by one of the other discrepancies he identifies, in the "Last Payment" row. TransUnion (the agency that showed the slightly higher balance) reports the "Last Payment" date as February 25, 2022, whereas Equifax reports it as April 1, 2022. (Id.) Had TransUnion run its report a mere ten days later, it presumably would have shown the same account balance as the other two agencies. In these circumstances, given the relative ease with which a reader can reconcile the alleged "discrepancies" in the credit report, the Court cannot conclude that Williamson's Amended Complaint has stated a plausible claim for relief. *See Santos*, 2021 WL 4034801, at *4; *Krosch v. Equifax Info. Servs., LLC*, No. 19-CV-2784 (NEB/KMM), 2020

8

WL 3036600, at *4 (D. Minn. June 5, 2020) (dismissing FCRA claim where plaintiff "fail[ed] to allege any facts supporting a plausible inference that the information reported by Experian was materially misleading, and thus, inaccurate under § 1681e(b).") Dismissal is therefore appropriate.

The dismissal will be with prejudice. Williamson has already amended his pleading once without success, and there is no reason to believe he would have better luck if given a third chance given the inherent implausibility of his claim for relief. Moreover, he did not even bother to respond to Experian's renewed motion to dismiss, nor has he asked for leave to file an amended pleading in the event the motion to dismiss is granted. The Court is therefore confident he cannot state a plausible claim for relief. *See Santos*, 2021 WL 4034801, at *5 (dismissing with prejudice).

## IV.   CONCLUSION

The Court GRANTS Experian's Motion to Dismiss Williamson's Amended Complaint (ECF 12) with prejudice. Experian's Motion to Dismiss Williamson's original Complaint (ECF 7) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: February 3, 2023

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE